1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

TONYA MACKEY,

11                        Plaintiff,

12          v.

13  CAROLYN W. COLVIN, Acting
    Commissioner of the Social Security
14  Administration[1],

15                        Defendant.

16

CASE NO. 12-cv-05664 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19  Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United

20  States Magistrate Judge, ECF No. 5). This matter has been fully briefed (*see* ECF Nos.

21  13, 16, 17).

22

23          [1] Carolyn W. Colvin became the Acting Commissioner of the Social Security
    Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil
24  Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

1   After considering and reviewing the record, the Court finds that plaintiff's severe

2   obesity and depression, along with her other non-severe impairments and resulting

3   limitations, did not render plaintiff unable to perform her past relevant work or unable to

4   perform work existing in the national economy. The decision that plaintiff was not

5   disabled is supported by substantial evidence in the record as a whole.

6       Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

7                                    BACKGROUND

8       Plaintiff, TONYA MACKEY, was born in April, 1975 and was 31 years old on

9   10   her alleged date of disability onset of January 1, 2007 (*see* Tr. 126-27, 149). She has past

11   relevant work experience as a substitute ASL interpreter, a bow maker (Christmas

12   decorations), a telemarketer, a caregiver, and an assistant retail store manager (Tr. 29,

13   161).  She received her GED, and has attended a community college (Tr. 45-46). Plaintiff

14   testified that she is close to obtaining her associates' degree (*see* Tr. 45).

15       Plaintiff has at least the severe impairments of obesity and a depressive disorder

16   (20 CFR § 404.1520(c)) (Tr. 18). During the relevant period of time, plaintiff reported

17   weighing approximately 450 pounds, and she testified at her hearing (after her date last

18   insured) that she weighed 560 pounds (*see* Tr. 46-47, 50-51, 153). Plaintiff is six feet tall

19   (*see* Tr. 46).

20       At the time of the hearing, plaintiff was married and living with her husband.

21   They have no children (Tr. 47).

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

1

PROCEDURAL HISTORY

2

Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II

3

of the Social Security Act, 42 U.S.C. § 423 (Tr. 126-27). Her application was denied

4

initially in March, 2009 and following reconsideration in May, 2009 (Tr. 72-77).

5

Although a different Administrative Law Judge was assigned to plaintiff's case

6

when her application was filed initially, plaintiff's requested hearing was held before

7

Administrative Law Judge Verrell Dethloff ("the ALJ") on March 14, 2011 (Tr. 42-62).

8

On April 6, 2011, the ALJ issued a written decision in which he concluded that plaintiff

9

was not disabled pursuant to the Social Security Act (Tr. 12-38).

10

11

On June 19, 2012, the Appeals Council denied plaintiff's request for review,

12

making the written decision by the ALJ the final agency decision subject to judicial

13

review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court in July,

14

2012 seeking judicial review of the ALJ's written decision (*see* ECF No. 1). Defendant

15

filed the sealed administrative record regarding this matter ("Tr.") on October 1, 2012

16

(*see* ECF Nos. 10, 11).

17

In her Opening Brief, plaintiff raises the following issues: (1) Whether or not the

18

ALJ failed to fully and fairly develop the evidence of record; (2) Whether or not the ALJ

19

failed to give proper consideration to the opinions expressed by Dr. Krebs, an examining

20

psychologist; (3) Whether or not the ALJ failed to give proper consideration to the

21

testimony of plaintiff and the third party statement of her husband; (4) Whether or not the

22

ALJ's medical-vocational analysis at step 4 constitutes reversible error; (5) Whether or

23

not the ALJ erred when he relied on the Medical-Vocational Guidelines to deny benefits

24

1   at step 5 despite the presence of an alleged severe psychiatric impairment and other

2   severe nonexertional impairment; and (6) Whether or not the ALJ's failure to consider

3   arthritis of the neck, low back, and left knee as severe impairments at step 2 is reversible

4   error (*see* ECF No. 13, p. 11).

<u>STANDARD OF REVIEW</u>

Plaintiff bears the burden of proving disability within the meaning of the Social

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

(9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

disability as the "inability to engage in any substantial gainful activity" due to a physical

or mental impairment "which can be expected to result in death or which has lasted, or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

impairments are of such severity that plaintiff is unable to do previous work, and cannot,

considering plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the

district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

DISCUSSION

1. **Whether or not the ALJ's failure to consider arthritis of the neck, low back, and left knee as severe impairments at step two is reversible error**.

Here, the ALJ found that plaintiff suffered from the severe impairments of obesity and a depressive disorder (Tr. 18). Plaintiff complains that the ALJ erred in failing to find that her arthritis of the neck, low back, and left knee were severe impairments at step two of the sequential disability evaluation process (*see* Opening Brief, ECF No. 13, pp. 17-18). Regarding these impairments, the ALJ included the following in his written decision:

> [Plaintiff] said that she had neck and back pain and stiffness, and sometimes used a cane. She has attributed knee, neck, and low back pain that she attributed to arthritis. The claimant has findings of only mild lumbar degenerative changes, and mild osteoarthritic changes of the left knee (internal citation to exhibit 10F). These findings are not particularly severe; the claimant has presented at examination with normal gait, and normal range of motion and motor strength (internal citation to exhibits 2F; 3F; 15F:4-7; 15F), and has denied any pain (internal citation to exhibit 15:4). These impairments are also not severe.

(Tr. 19 (internal footnotes omitted)).

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling  . . . ." 20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009) (unpublished opinion). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the

1   impairment does not prevent the claimant from engaging in any substantial gainful

2   activity." *Bowen, supra*, 482 U.S. at 146. Plaintiff bears the burden to establish by a

3   preponderance of the evidence the existence of a severe impairment that prevented

4   performance of substantial gainful activity and that this impairment lasted for at least

5   twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a),

6   416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601

7   (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the

8   claimant's burden to "'furnish[] such medical and other evidence of the existence thereof

9   as the Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. §

10  423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen

11  v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. §

12  405(g); 20 C.F.R. §§ 404.1505, 404.1520).

13          In this matter, plaintiff has not demonstrated that her pain and/or arthritis of the

14  neck, low back and left knee significantly limited her ability to conduct basic work

15  activities or caused more than minimal effect on her ability to work. Plaintiff appears to

16  argue that because plaintiff has obesity and because obesity often is associated with

17  disturbances to the musculoskeletal system, that her alleged arthritis of the neck, low

18  back and left knee therefore significantly limited her ability to conduct basic work

19  activities (*see* Opening Brief, ECF No. 13, p. 18). Although plaintiff states that the

20  combined effects of her symptoms need to be considered together when considering

21  whether or not her impairments are severe, plaintiff fails to explain how she has

22  demonstrated that these alleged impairments met the level of severity required. The

ALJ's finding that plaintiff suffered from severe obesity, but that her alleged pain and arthritis of the neck, low back and left knee were not severe impairments, is supported by substantial evidence in the record as a whole, as discussed below.

Regarding plaintiff's allegations of chronic pain in her neck, low back and left knee, the ALJ noted objective medical findings, such as "only mild lumbar degenerative changes, and mild osteoarthritic changes of the left knee" (*see* Tr. 19). The ALJ also explicitly relied on the fact that plaintiff "denied any pain," reporting no musculoskeletal pain to her medical health care provider on April 13, 2009 during the relevant period of alleged disability (*see id.* (*citing* Tr. 308 ("MUSCULOSKELETAL: Negative for arthralgias and myalgias"))). The ALJ also cited multiple examinations during which plaintiff demonstrated normal gait, normal range of motion and/or normal motor strength (*id.* (*citing* exhibits 2F; 3F; 15F, *e.g.*, Tr. 223 ("NECK: supple, full ROM"), 232 ("NECK: full range of motion without limitations . . . . NEURO: Nonfocal exam. Normal gait"); 238 ("Her gait and posture were normal"); 309-10 (neck normal ROM; "MUSCULOSKELETAL: normal gait; normal range of motion of all major muscle groups; muscle strength; 5/5 in all major muscle groups; normal overall tone spine; no scoliosis or other abnormal spinal curvatures"); *see also* Tr. 217-18)).  Plaintiff offered no evidence regarding any limitations in her activities caused by her allegations of chronic pain in her neck, low back and left knee.

The Court concludes that the ALJ's finding that plaintiff's pain and arthritis of the neck, low back, and left knee were not severe impairments is supported by substantial evidence in the record as a whole.

2. **Whether or not the ALJ failed to give proper consideration to the opinions expressed by Dr. Lucretia Hyzy Krebs, Psy.D., an examining psychologist.**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).  It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  *Morgan, supra,* 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the evidence."  *Sample, supra,* 694 F.2d at 642 (citations omitted).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, plaintiff contends that the ALJ erred in his review of the opinion of examining psychological doctor, Dr. Krebs.  The ALJ found that Dr. Krebs' opinion was not specific (Tr. 24). Plaintiff claims that based on this finding, the ALJ should have developed the record further.

The ALJ summarized the opinion and examination record of Dr. Krebs, noting that she examined plaintiff in January, 2009 (*id.*). The ALJ noted plaintiff's subjective description of her symptoms, and also noted various objective findings based on examination (*see id.*).  The ALJ noted plaintiff's calm, alert and responsive presentation and that Dr. Krebs noted that plaintiff was anxious at the beginning of the examination (*id.*). The ALJ noted plaintiff's intact mental status examination, including various specific results, such as good fund of knowledge and correct performance of serial 7s (*id.*). The ALJ noted that Dr. Krebs opined that plaintiff's mental and physical problems were significant barriers to her employability, but also noted that her opinion was not specific (*id.*). The ALJ noted Dr. Krebs' observations that plaintiff's symptoms "were somewhat based on recent situational reversals (loss of husband's job and financial

worries)" (*id.* (footnote omitted)). Finally, the ALJ noted that Dr. Krebs opined that plaintiff suffered from "some social limitations, but was uncertain about that; she pointed out that claimant was able to handle community college classes, but would possible do less well when having to perform under someone else's standard" (Tr. 24 (*citing* exhibit 3F)).

The ALJ gave Dr. Krebs' treatment report only some weight for multiple reasons. First, the ALJ noted that all of Dr. Krebs' diagnoses "were only 'provisional' or 'rule-out,' consistent with no firm diagnostic finding, only a 'maybe'" (*id.*). Secondly, the ALJ noted that Dr. Krebs' based her opinion regarding "substantial barriers to employability" on a combination of physical and mental factors, and found that this particular opinion should not be "given much weight because Dr. Krebs is not particularly qualified to assess physical limitation in the claimant's occupational functioning" (Tr. 24-25). With respect to this particular opinion, the Court notes that Dr. Krebs is a doctor of clinical psychology, and as such, does not have a medical degree (M.D.) supporting her ability to opine regarding physical medical conditions and limitations (*see* Tr. 235). The Court also notes that Dr. Krebs' specifically indicated that this opinion was based on "[t]aken together, her mental health symptoms along with the general medical conditions" (*see* Tr. 240).

The ALJ also failed to find further limitations in plaintiff's RFC as a basis of Dr. Krebs' opinion due to the fact that Dr. Krebs assessed plaintiffs' global assessment of functioning ("GAF") at 67, which the ALJ properly found to be inconsistent with significant mental problems (*see* Tr. 25). The ALJ did provide some weight to that

portion of Dr. Krebs' opinion, noting that plaintiff demonstrated some difficulty with memory testing and that Dr. Krebs' assessed some difficulty with social functioning (*see id.*).

Based on the relevant record, the Court concludes that the ALJ provided not only specific and legitimate, but clear and convincing, reasons for his failure to assess greater mental limitations in plaintiff's RFC on the basis of Dr. Krebs' opinion and for his failure to credit fully her opinion that "[t]aken together, her mental health symptoms along with her general medical conditions stand as significant barriers to employability at this time" (*see* Tr. 24-25, 240). The Court finds no harmful error in the evaluation of Dr. Kreb's opinion.

Plaintiff also argues that Dr. Krebs' opinion was ambiguous, which triggered the ALJ's duty to develop the record further. However, the Court concludes that Dr. Krebs' opinion, nor the record as a whole, was ambiguous, as discussed further in the following section, *see infra*, section 3.

### 3.   Whether or not the ALJ failed to fully and fairly develop the evidence of record.

The ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)).  This duty is "especially important" when plaintiff suffers from a mental impairment. *Delorme v.*

*Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). This is "[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset." *Id.* (*quoting* Social Security Ruling 83-20). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The Court notes that plaintiff was represented by an attorney before the Administration and similarly is represented by the same attorney here before this Court (*see* Tr. 15). Plaintiff complains much on the basis that she requested that the Administration provide a consultative psychological examination multiple times, due to her inability to afford one on her own (*see* Opening Brief, ECF No. 13, pp. 11-13; Reply Brief, ECF No. 17, pp. 1-2). First, it is plaintiff's burden to prove disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987), and it is her burden to present such evidence as is required to demonstrate the existence of her impairments and their functional limitations, *see Bowen, supra*, 482 U.S. at 146 (It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require'") (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)). Plaintiff has not cited any support for the proposition that an ALJ's duty to develop the record for a claimant is triggered by lack of funds.

1    However, if the ALJ cannot determine if a plaintiff has met her burden because the

2    evidence of record is ambiguous or is inadequate to allow for proper evaluation of the

3    evidence, then the ALJ's duty to supplement the record is triggered.  *See Mayes*, *supra*,

4    276 F.3d at 459-60; *Tonapetyan*, *supra,* 242 F.3d at 1150. For the reasons discussed, the

5    Court concludes that this duty was not triggered in this matter.

6    The Court notes that in November, 2010, ten months after her date last insured of

7    December 31, 2009 (*see* Tr. 15), plaintiff appears to have made her first request for a

8    "comprehensive psychological evaluation to document the nature and severity of her

9    *current* psychiatric condition" (*see* Tr. 212 (emphasis added)). Although plaintiff may

10   have wished for an additional psychological consultation from a psychologist who would

11   opine that she was more limited, an opinion regarding plaintiff's psychological

12   impairments and functioning, which occurred following examination of plaintiff in

13   January, 2009, during her alleged period of disability, already was present in the record

14   and has been discussed already by the Court, *see supra*, section 2. Dr. Krebs conducted a

15   mental status examination and diagnostic evaluation of plaintiff (*see* Tr. 235-40). In

16   addition, the record before the ALJ contained the specific functional assessments of

17   plaintiff's mental impairments and resultant limitations by DDS non-examining medical

18   consultants. Again, the Court concludes that Dr. Krebs' examination record and opinion

19   is not ambiguous; and also concludes that the entire record is adequate for an assessment

20   of plaintiff's impairments and resulting limitations.

21   Regarding physical impairments, plaintiff also implies that a duty to develop the

22   record was triggered by plaintiff's extreme amount of weight gain. However, the ALJ

1   found that plaintiff's obesity was severe impairment at step two of the sequential

2   disability evaluation process, and included limitations on plaintiff's RFC on the basis of

3   plaintiff's obesity, such as that plaintiff only could perform sedentary work, and that she

4   had "limitations to occasional for climbing, kneeling, and crawling, and mild limitations

5   from exposure to inhalants and hazards  .  .  .  ." (*see* Tr. 22). In doing so, the ALJ

6   discussed and credited multiple opinions from plaintiff's examining doctors.

7        For example, the ALJ included the following in his written decision:

> Marie Ho, M.D. performed a consultative physical examination of the
> claimant on April 29, 2009. The claimant described some
> musculoskeletal pain and presented as morbidly obese, with a BMI
> greater than 50. She weighed 350 pounds. The claimant moved slowly
> and presented with a slight limp. She had some difficulty sitting
> comfortably because of her weight, but she was able to remove her
> slippers, and get on and off the examination table slowly. Straight leg
> raising was positive, but the claimant had no back tenderness or spasm.
> Dr. Ho diagnosed morbid obesity and probable neck, back and knee
> arthritis, with pain exacerbated by her obesity. She thought that the
> claimant was capable of sedentary work, with postural limitations
> consistent with sedentary tasks. There were no manipulative restrictions.
> Dr. Ho's report is given very significant weight, but the clinical findings,
> and observations of the claimant's normal psychical activity at the
> examination, do not show a severe musculoskeletal condition.

> The claimant has continued treatment at Washington Park Medical
> Center. She was seen by a physician's assistant, supervised by Paul
> Williams, M.D., in April 2009. The claimant had normal gait; normal
> range of motion, 5/5 strength in all major muscle groups; she was alert
> and oriented, had appropriate affect and demeanor; normal psychomotor
> function; normal speech pattern; and normal thought and perception. She
> was assessed with her obesity. In August 2009, she reported leg pain and
> was morbidly obese, but she had a normal gait. She had a normal
> psychiatric presentation as well.

(Tr. 25 (internal citations and footnotes omitted)).

The ALJ also indicated that he assigned "considerable weight to the opinions of the Washington DDS physicians and psychologists in this matter," and discussed the opinion from Dr. Robert Hoskins of the Washington DDS (*see* Tr. 26). The ALJ noted that Dr. Hoskins opined that plaintiff could "sit only about 2 hours in a workday, which is consistent with sedentary tasks" (*id.*). The ALJ found that Dr. Hoskins' assessment is "consistent with the record, notably with the objective findings on examinations," and gave it substantial weight (*id.*).

The ALJ also noted plaintiff's various activities and testimony, including that she spent up to 10 hours a day on her studies (*id.; see also* Tr. 48). The ALJ also noted that plaintiff had indicated that she likes working on the computer; can do some household chores with breaks; could drive a little bit; and go shopping briefly (*see* Tr. 27-28). The ALJ noted that plaintiff was two quarters from obtaining her AA degree, and the Court notes that when asked how many hours a day that she spent pursuing her studies, plaintiff testified "Like, 10 plus" (*see* Tr. 27, 48).

For the reasons discussed, and based on the relevant record, the Court concludes that the ALJ's duty to develop the record further was not triggered in this matter and that the record was adequate for an appropriate evaluation. The Court also has considered the new evidence submitted by plaintiff to the Appeal Council, and concludes the this evidence from Ms. Chrysta L. Anderson, M.S., CHt., who provided plaintiff services as a hypnotherapist and a life and relationship coach, does not demonstrate that the ALJ's decision was not supported by substantial evidence in the record as a whole (*see* Tr. 5, 315).

4. **Whether or not the ALJ failed to give proper consideration to the testimony of plaintiff.**

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility

evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony. *Smolen, supra*, 80 F.3d at 1284; *see also Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, *supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603).

Although lack of support from the objective medical evidence cannot form the sole basis on which to fail to credit fully a claimant's allegations, here, the ALJ relied on lack of support from the objective medical evidence; inconsistencies between plaintiff's allegations and the medical record; and plaintiff's reported activities of daily living which contradicted her other testimony and allegations.

The ALJ noted plaintiff's allegations, including that plaintiff alleged that she "could not sit for any period of time without having to lie down" (*see* Tr. 23 (*citing* exhibit 3E)) and that she could not work because of her physical limitations and anxiety (*see* Tr. 24). The ALJ then found that plaintiff's statements were not credible with respect to the intensity, persistence and limiting effects of her symptoms (*see* Tr. 24). In support of this finding, the ALJ discussed aspects of the objective medical evidence that are inconsistent with plaintiff's allegations (*see* Tr. 24-25).

First, the ALJ discussed the psychological evaluation from Dr. Krebs, discussed by the Court previously, *see supra*, section 2. The ALJ discussed many of the findings by Dr. Krebs, including plaintiff's "intact" mental status examination (*see* Tr. 25). The ALJ also noted that Dr. Krebs assessed plaintiff's GAF at 67 and noted that this assessment "is not consistent with significant mental problems" (*see* Tr. 24-25). The Court also notes

that plaintiff's allegation of disabling anxiety is contradicted by plaintiff's denial of anxiety on April 13, 2009, during the alleged disability period (*see* Tr. 308).

Next, the ALJ discussed some of the evaluations by physicians of plaintiff's physical limitations, also discussed by the Court already, *see supra*, section 3 (*see* Tr. 25). For example, in this context, the ALJ noted plaintiff's "normal gait; normal range of motion, 5/5 strength in all major muscle groups," on examination, among other things (*see id.*).

Based on the relevant record, the Court concludes that the ALJ's finding that plaintiff's allegations were contradicted by the objective medical evidence provides some support for his determination not to credit her allegations fully.

The ALJ also found that plaintiff's testimony at her hearing contradicted her other allegations; and that her activities of daily living contradicted her other allegations and testimony (*see* Tr. 27-28). The Court already has noted the discrepancy between plaintiff's allegation of disabling anxiety and her report to her health care provider that she was not suffering from any anxiety or sadness during the relevant period of time. In addition, despite plaintiff's allegation that she could not "sit for any period of time without having to lay down for a while" (*see* Tr. 154), the ALJ noted that plaintiff testified at her hearing that she attended college full time, starting in the fall of 2010; that she was two quarters from getting her AA degree; that she was able to get her work done online; and that she spent up to 10 hours a day on her studies (she actually testified that she spent more than 10 hours a day, as noted previously) (Tr. 27; *see also* Tr. 48). The

ALJ also noted that plaintiff told Dr. Ho that she did some light housekeeping; could

drive a little bit; and go shopping briefly (*see* Tr. 28).

The Court notes that an ALJ may "draw inferences logically flowing from the

evidence." *See Sample, supra*, 694 F.2d at 642 (*citing Beane*, *supra*, 457 F.2d 758; *Wade*,

*supra*, 509 F. Supp. at 20). Here, among other logical inferences drawn by the ALJ, it

appears that the ALJ drew the logical inference that in order to complete plaintiff's

studies successfully and spend over 10 hours a day working on her studies online, she

must have been able sit for some length of time before having to lie down, despite her

allegation in her social security application to the contrary (*see* Tr. 48, 154).

Based on the relevant record, the Court concludes that the ALJ's finding of

inconsistencies between plaintiff's allegations of functional limitations, and her activities

of daily living and other testimony is supported by substantial evidence in the record as a

whole.

For the reasons discussed and based on the relevant record, the Court concludes

that the ALJ provided clear and convincing reasons for failing to credit fully all of

plaintiff's allegations concerning her functional limitations.

5.   **Whether or not the ALJ failed to give proper consideration to the third**

**party statement of plaintiff's husband**.

Pursuant to the relevant federal regulations, in addition to "acceptable medical

sources," that is, sources "who can provide evidence to establish an impairment," *see* 20

C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and

1  "other sources" such as nurse practitioners, therapists and chiropractors, who are

2  considered other medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v.*

3  *Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. §

4  404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL

5  2329939. An ALJ may disregard opinion evidence provided by "other sources,"

6  characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane

7  to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236

8  F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

9  Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ

10  must consider lay witness testimony concerning a claimant's ability to work."  *Stout v.*

11  *Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006)

12  (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

13

14      The ALJ failed to credit fully the statement by plaintiff's husband for the same

15  reasons that he failed to credit fully plaintiff's allegations -- that is, inconsistency with the

16  objective medical record, plaintiff's activities of daily living and other testimony (*see* Tr.

17  28-29). Based on the relevant record, the Court concludes that the ALJ provided germane

18  reasons for his failure to credit fully the lay statement from plaintiff's husband.

19      **6.  Whether or not the ALJ's medical-vocational analysis at step 4 constitutes**

20          **reversible error.**

21      Plaintiff first argues that the ALJ erred in characterizing plaintiff's work as a

22  telemarketer as past relevant work: Plaintiff claims it was an unsuccessful work attempt

23  ("UWA").

24

1   Past relevant work is work that was "done within the last 15 years, lasted long

2   enough for you to learn to do it, and was substantial gainful activity."  20 C.F.R. §§

3   404.1565(a), 416.965(a).  Plaintiff does not dispute that this work was done within the

4   last 15 years or that it was substantial gainful activity.

5   Regarding whether or not plaintiff's seven months of work as a telemarketer meets

6   the durational requirement, according to the Social Security Ruling SSR 84-25, if work

7   was substantial gainful activity, and it lasted more than 6 months, it "cannot be a UWA

8   regardless of why it ended or was reduced to the non-SGA level." SSR 84-25, 1984 SSR

9   LEXIS 17, at *7, 1984 WL 49799.

10

11   Plaintiff testified that she worked this job for approximately seven months, and

12   that she was able to perform the job at first, but then "they really started putting on the

13   pressure of numbers, like, a quota every day. And that put a lot of stress on me" (*see* Tr.

14   49).

15   The Court concludes that plaintiff's work as a telemarketer was past relevant work

16   and not an UWA. *See* SSR 84-25, 1984 SSR LEXIS 17, at *7, 1984 WL 49799.

17   Plaintiff also alleges that the ALJ erred at step four because her alleged inability to

18   engage in prolonged sitting for two hours and her alleged social limitations are

19   inconsistent with the ALJ's step four finding that she could perform her past relevant

20   work as a telemarketer. Plaintiff also alleges that "her other exertional and nonexertional

21   limitations are submitted to be inconsistent with the ability to perform the full range of

22   sedentary work required of the telemarketing position," however, plaintiff has not alleged

23

24

1   any other exertional or nonexertional limitations other than those addressed by the ALJ or

2   herein (*see* Opening Brief, ECF No. 13, p. 16).

3       At step-four in the evaluation process, the ALJ must determine whether or not a

4   claimant's impairment(s) prevents the claimant from doing past relevant work. *See* 20

5   C.F.R. § 404.1520(f).   If the ALJ finds that the claimant has not shown an incapability of

6   performing past relevant work, the claimant is not disabled for social security purposes

7   and the evaluation process ends.   *See id.*   Plaintiff bears the burden to establish the

8   inability to perform past work. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)

9   (*citing* 20 C.F.R. §§ 404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th

10   Cir. 1990)).   As noted by the Ninth Circuit:

11

12       At step four, claimants have the burden of showing that they can no
         longer perform their past relevant work.  20 C.F.R. §§ 404.1520(e) and
13       416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).  Once they
         have shown this, the burden at step five shifts to the Secretary to show that,
14       taking into account a claimant's age, education, and vocational background,
         the claimant can perform any substantial gainful work in the national
15       economy.  20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216
         F.3d 864, 869 (9th Cir. 2000).
16
         Although the burden of proof lies with the claimant at step four, the ALJ
17       still has a duty to make the requisite factual findings to support his
         conclusion. SSR 82-62; *see* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574
18       and 416.974, 404.1565 and 416.965.  [Footnote omitted]  This is done by
         looking at the 'residual functional capacity and the physical and mental
19       demands' of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and
         416.920(e).  The claimant must be able to perform:
20       1. The actual functional demands and job duties of a particular past
         relevant job; or
21       2. The functional demands and job duties of the occupation as generally
         required by employers throughout the national economy. SSR 82-61. This
22       requires specific findings as to the claimant's residual functional capacity, the
         physical and mental demands of the past relevant work, and the relation of the
23       residual functional capacity to the past work. SSR 82- 62.

24   *Id.*

1

2          Regarding plaintiff's allegation that she cannot sit for two hours at a time, and that

3    the ALJ erred in failing to credit this allegation, the Court already has addressed this

4    argument in the context of plaintiff's credibility and testimony, *see supra*, section 4. For

5    the reasons already discussed, the Court does not find error in the ALJ's step four finding

6    as a result of plaintiff's allegations of an inability to sit for two hours without taking a

7    break to lie down.

8          Plaintiff also alleges that the ALJ erred at step four because of her alleged social

9    limitations. In support of this allegation, plaintiff cites the opinion from Dr. Carla van

10   Dam, Psy. D., a non-examining medical consultant, that plaintiff suffered from marked

11   limitations in her ability to interact with the public and was restricted to minimal contact

12   with co-workers (*see* Tr. 268). Regarding this opinion, the ALJ included the following in

13   his written decision:

14
15            Dr. Carla Van Dam, and Dr. William Lysak, determined that the
              claimant's depression caused a range of moderate limitations (internal
16            citation to exhibit 5F; 11F) that may at times interrupt extended
              concentration. While she could accept supervision it was felt she should
17            have no more than superficial contact with the general public, and would
              be able to interact minimally with co-workers and manage occasional or
18            routine changes in work settings (internal citation to exhibit 6F; 11F).

19            As noted, I conclude that the DDS assessment is somewhat generous in
              the claimant's favor; her husband reported that she had no significant
20            difficulty dealing with people, but preferred to stay home (internal
              citation to exhibit 6E), and she is apparently successfully attending
21            college classes. However, I will accept DDS evaluation in general,
              except for the restriction to minimal contact with co-workers; the
22            claimant and her husband both denied problems here, although she
              admitted to some difficulty with stress (internal citation to exhibit 5E)
23            and her husband thought that she had some 'issues' with her
              'dysfunctional family' (internal citation to exhibit 6E). To give her the
24

ORDER ON PLAINTIFF'S COMPLAINT - 26

benefit of any doubt, I will assess her as if limited to non-collaborative tasks.

(Tr. 26 (footnotes omitted)).

First, the ALJ supported his rejection of the assessed limitation to minimal contact with co-workers due to the fact that both plaintiff and her husband denied any problems in this area (*see* Tr. 26). Plaintiff has not disputed that both plaintiff and her husband denied that she had any difficulties dealing with co-workers and the Court notes that plaintiff's husband indicated that plaintiff "gets along with friends and strangers very well, but has a very dysfunctional family that contributes heavily to her depression" (*see* Tr. 182).

Based on the relevant record, the Court concludes that the ALJ's determination not to credit this assessed limitation to minimal contact with co-workers is supported by substantial evidence in the record as a whole.

Regarding Dr. van Dam's assessment regarding superficial contact with the general public, the ALJ credited this finding, and included within plaintiff's RFC a limitation to superficial contact with the general public (*see* Tr. 22).

The ALJ found that plaintiff could perform her past relevant work as a telemarketer both as it actually was performed and as it generally is performed (*see* Tr. 29-30). It is not clear that the functional demands of the job of telemarketer as generally required by employers in the national economy can be met given plaintiff's restriction to only superficial contact with the general public. However, any error here is harmless, as she actually performed work as a telemarketer and was not precluded by any limitation

1   with respect to superficial contact with the public. As noted by the ALJ, "she said that she

2   was able to do her telemarketing job well enough, but stopped when she felt too

3   pressured by quota demands" (*see* Tr. 29, 49).

4        For the reasons stated and based on the relevant record, the Court concludes that

5   the ALJ's finding at step four that plaintiff could perform her past relevant work as a

6   telemarketer is supported by substantial evidence in the record as a whole.

7        **7.  Whether or not the ALJ erred by relying on the Medical-Vocational
        Guidelines to deny benefits at step 5 despite the presence of alleged severe
8        psychiatric impairment and other severe nonexertional impairment.**

9        The ALJ did not rely on a vocational expert's testimony at step five of the

10  sequential disability evaluation process when he found that plaintiff was capable of

11  performing other work existing in the national economy (*see* Tr. 30). Plaintiff contends

12  that the ALJ erred in relying on the Medical-Vocational Guidelines instead of calling a

13  vocational expert to testify at plaintiff's hearing.

14       Initially, it should be noted that the ALJ's finding at step 5 was an additional way

15  of concluding that plaintiff was not disabled.  The ALJ had already reached this same

16  conclusion based on his finding that she was capable of performing past relevant work

17  (Tr. 30) – a finding that this Court has previously determined to be supported by

18  substantial evidence in the record (*see* section 6, above).  Therefore, any error here would

19  be harmless.

20       Nevertheless, the ALJ's reliance on the grids at step 5 also appears to be without

21  error.  The Administration has put forth Social Security Rulings relevant to this topic,

22  including one regarding "Capability to do other work - - the Medical-Vocational Rules as

a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments." *See, e.g.*, SSR 83-14, 1983 SSR LEXIS 33, 1983 WL 31254. This ruling indicates that nonexertional impairments "may or may not significantly narrow the range of work a person can do." SSR 83-14, 1983 SSR LEXIS 33 at *3. Regarding use of the Medical-Vocational Guidelines, or "grids," this Ruling also indicates that "[w]here it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected." (*Id.* at *16).

According to the Ninth Circuit, a vocational expert's testimony is required at step five "when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case." *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). However, the single fact that a claimant has severe non-exertional limitations alone "does not require that the ALJ seek the assistance of a vocational expert at step five." *See id.* at 1075-76. These findings at steps two and five "require different levels of severity of limitations." *Id.* at 1076. The non-exertional limitations must be sufficiently severe such that a claimant's range of work permitted by the claimant's exertional limitations is not significantly limited. *See id.* Otherwise, a vocational expert's testimony is required at step five. *See id.*

Here, the only severe impairments found by the ALJ are obesity and depression, and the Court has upheld this finding, *see supra*, section 1. The ALJ noted and discussed plaintiff's other symptoms and nonexertional limitations, such as her limitation to superficial public contact. However, the ALJ concluded that plaintiff's "mental

1    limitations do not unduly reduce the capacity to perform substantial gainful activity" (*see*
2    Tr. 30).

3        Plaintiff challenges the ALJ's step five finding and supports her challenge by
4    reference to the un-specific opinion by Dr. Krebs which the Court has found that the ALJ
5    properly failed to credit due to a lack of expertise in medicine and physical impairments,
6    as discussed by the Court previously, *see supra*, section 2. Plaintiff also challenges the
7    ALJ's step five determination by remarking on her need to change positions due to pain
8    and limitations associated with body habitus, however, the ALJ did not find that plaintiff
9    required an ability to change positions, as it was not supported by objective medical
10   evidence and was based solely on plaintiff's allegation, a determination which the Court
11   has found proper, *see supra*, section 4.
12

13       Finally, plaintiff supports her challenge to the ALJ's step five determination made
14   without vocational expert, by citation to the opinion from Dr. van Dam regarding
15   plaintiff's limitation to superficial contact with the general public. First, the Court notes
16   that the ALJ found that Dr. van Dam's assessment was somewhat generous in plaintiff's
17   favor, as plaintiff's husband "reported that she had no significant difficulty dealing with
18   people but preferred to say home" (Tr. 27 (*citing* Tr. 182)). As quoted by the Court
19   previously, plaintiff's husband submitted a third party statement in which he indicated
20   that plaintiff "gets along with friends and strangers very well  .  .  .  ." (Tr. 182).

21       Therefore, based on the relevant record, the Court does not find that plaintiff's
22   limitations in her ability to interact with the general public demonstrate that her
23

24

1   nonexertional limitations were "at a sufficient level of severity such as to make the grids

2   inapplicable to the particular case." *See Hoopai*, *supra*, 499 F.3d at 1076.

3       The Court also notes that the ALJ found that plaintiff's limitation "would not have

4   a significant effect on claimant's ability to perform unskilled work, which is the universe

5   of work which is the subject of the Commissioner's Medical Vocational Guidelines, 20

6   C.F.R. Part 404, Subpart P, Appendix 2" (*see* Tr. 31). The ALJ also quoted Social

7   Security Ruling 85-15, noting that when "considering [if] an individual with significant

8   mental or emotional impairments is capable of making a vocational adjustment, the

9   primary focus should be upon the demands of simple, unskilled work:"

10

11          [U]nskilled jobs at all levels of exertion constitute the potential
           occupational base for persons who can meet the mental demands of
12         unskilled work. These jobs ordinarily involve dealing primarily with
           objects, rather than with data or people, and they generally provide
13         substantial vocational opportunity for persons with solely mental
           impairments who retain the capacity to meet the intellectual and
14         emotional demands of such jobs on a sustained basis.

15   (*id.* (*quoting* SSR 85-15, 1985 SSR LEXIS 20 at *11-*12, 1985 WL 56857)). This ruling

16   applies explicitly in the absence of exertional impairments, but also provides support for

17   the ALJ's application of the Medical-Vocational Guidelines in this matter herein.

18       For the reasons discussed and based on the relevant record, the Court concludes

19   that the ALJ's finding that plaintiff's nonexertional limitations were not sufficiently

20   severe to require the testimony of a vocational expert is a finding based on substantial

21   evidence in the record as a whole. The ALJ's findings regarding plaintiff's lack of

22   sufficiently severe psychological limitations, including social limitations, were supported

23   by his evaluation of the examination record and opinion of Dr. Krebs; by Dr. Krebs'

24

1   assignment of a GAF of 67; by the psychological assessment by non-examining

2   consulting doctor, Dr. van Dam, as credited by the ALJ; by plaintiff's largely intact

3   mental status examination results; and finally, by plaintiff's denial of anxiety, anhedonia

4   or sadness (with anti-depressant medication) on April 13, 2009 (*see* Tr. 308).

5   CONCLUSION

6

7       Based on the stated reasons and the relevant record, the Court **ORDERS** that this

  matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

8

9       **JUDGMENT** should be for defendant and the case should be closed.

10       Dated this 10th day of May, 2013.

11

12

13   J. Richard Creatura

  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24